So this case is 523-1154, Murray et al. v. Abrahan. I have Mr. Ryan in court. If I mispronounce your name, I'm sorry, is it Ms. Wiechel? Wiechel, your honor. Wiechel, okay. Ms. Wiechel sent in a motion yesterday afternoon asking that she be allowed to appear via Zoom. I guess I should read names on the briefs. I didn't realize you were in Will County. So that was granted. I think the clerk contacted Mr. Ryan, gave him the option. He decided to be with us today. We think we have the Zoom. We're having issues with it, but we think we've got those taken care of. If for some reason, Ms. Wiechel, you're unable to hear, unable to do anything, just raise your hand. We'll stop. We'll accommodate and make sure everybody has their full time and full day in court today. And what I'm going to do, because I just, again, want to make sure, once you, as you introduce yourself, Mr. Ryan, I want to make sure opposing counsel can hear you okay. Okay. Good morning, your honors. I'm Eric Ryan. I represent the appellant. Can you hear me, Cheryl? Yes, I can. Thank you. Okay. Perfect. Thank you all. And it's an honor to appear in this historic room. The defendant raises three arguments on appeal of these verdicts. The verdicts were $125,000 compensatory damages per tenant and $200,000 per tenant in punitive damages. Our first argument is that the punitive awards of $200,000 each violate 735 ILCS Section 5-2-1115.05A and 5-2-1115.2 because no economic damages were proven. Mr. Ryan, how does Illinois statutory law apply to the Fair Housing Act? Well, Judge, in their brief, they said themselves, the plaintiffs did, that the Illinois procedural law controls. They could have gone with federal law, but they went with our courts. Procedural law and substantive law are different. Are you saying that's a procedural law as to how much damage can be awarded? The plaintiffs regarded that as procedural law. Well, we're not bound by any misapplications of law. The Fair Housing Act has a damages provision in it. Yes, and we have an argument that the federal courts in the Seventh Circuit in the Scarmino case said that when a high compensatory award is awarded, and that was $582,000 in that case, that the punitive award should not have anything other than a one-to-one relationship. And that was brought pursuant to the Illinois Consumer Fraud Act? Yes. Not the Fair Housing Act? Well, they dismissed... And the Fair Housing Act is a federal statute that has a damages provision in it, so why aren't we there? Judge, these plaintiffs dismissed their Consumer Fraud Act count three, so we're only here on the Fair Housing Act. Right. And I think that the Seventh Circuit case that I'm talking about would apply. Our third argument is the compensatory award for Plaintiff Murray ignored his own inconsistent conduct and was based on improper testimony, which the pro se defendant, my client, did object to, and that objection was overruled. So getting back, Your Honor, and it's a choice of law question. There's no doubt about that. And let me talk about that briefly. The plaintiff chose to be subjected to the rules and procedural statutes of an Illinois state court, even though they did file federal causative actions, which, of course, they can do in state court under the Federal Housing Act. The plaintiffs never argued below, anywhere in the record, that Illinois law and punitive damages limits did not apply. Parenthetically, the only federal limits on punitive damages in this circuit were imposed by Judge St. Eve, who's from Belleville, in the case I talked about that's a U.S. bank case, and that's when she ruled that when there's a high compensatory award in general, the punitives should not be five times that because that's what the facts were in that case. That's a case dealt with a totally different statute and dealt with borrower's rights. True, and abusive conduct by the bank. That case has nothing to do with the facts in this case. But, Judge, if you look at the federal law on proportionality between compensatory and punitive damages, that's what that case speaks to. And I'm going to rearrange my argument, Your Honor, to discuss that federal case. Okay. One second. One second. So the Seventh Circuit's due process limitation on a punitive damage award was not filed by the trial court, even though the case of Sacamino v. U.S. Bank from 2019 was brought before the court. In that case, the plaintiff, Ms. Sacamino, proved defendant's outrageous financial misconduct towards her, and she had been in bankruptcy, Chapter 13 protection. And, in fact, she had overpaid her mortgage, and the bank kept claiming that she owed them money. So she won $582,000 in compensatory damages in the Northern District, plus a $3 million punitive award when her economic loss was proven to be $12,000. The holding was that five times compensatory damages punitive award violates federal due process, and the court reduced it to the amount of the compensatory damages of a like amount of $582,000, a one-to-one relationship between the compensatory and punitives, for a net verdict for her, affirmed on appeal, $1.164 million on behalf of the victim in that case. So if this court does not accept our first claim here, that Illinois statutes on punitive damages where you have to have actual damages, which we concede in this case, there was emotional damages to each plaintiff as a result of the defendant's conduct, the trial court found. But they can't get past the second part if Illinois procedural law applies, and that is you only get three times your economic loss. They prove no economic loss. I just don't understand how you can insert Illinois procedural law into a Federal Fair Housing Act claim which has its own damage provision. Because, Your Honor, that was the court that the plaintiff chose. They could have filed in federal court. They chose not to for whatever reason. You can't mix statutes just because you want to. You can't file an Illinois Consumer Fraud Act claim and then ask the Fair Housing Act damages. But, Your Honor, they did dismiss before trial, or at trial, the Illinois Consumer Fraud Act claim. I know they did, but that's what I'm saying is if they had left the Illinois Consumer Fraud Act claim, you can't mix damages. You would have had separate verdict forms for each. You would have had a Federal Fair Housing Act claim with its damage statutory provision, and then you would have had an ICFA claim with its various statutory provisions. And the limitation that you talk about may or may not have applied. I don't know the answer to that question. But what you want to do now is you want to use an Illinois statute to limit something that's a federal cause of action. And I just, that doesn't compute in my brain as my problem with that. Well, Judge, I don't know how this court is going to characterize the three times economic loss to win any punitive damages, whether that's going to be procedural or substantive. I can see it either way. We have the old case of BMW, which talks about due process from a U.S. Supreme Court case point of view. So we have some guidance from the U.S. Supreme Court on due process. That's why in our post-trial motions, Your Honor, we offered Judge Coker the alternative, either dismiss the punitive verdicts based on the Illinois state law, or you have to file a federal law in a federal cause of, two federal causes of actions, that in general when there's high compensatory damages awarded, that the punitives should bear a one-to-one relationship with that. There is no federal law I'm aware of that says there must be a one-to-one relationship. In the case that you've cited, they considered other factors as to why it should be a one-to-one procedure. But they did not rule as a matter of law that due process requires a one-to-one ratio, did they? That's how I read it, Your Honor, given the facts of that case. Given the facts of that case? Yes, ma'am. Okay. Judge, our last argument is that Judge Coker erred when he did not, when he gave very high compensatory reward to Mr. Murray, when there was a lot of evidence of inconsistent conduct. In other words, we're claiming that the court abused his discretion by ignoring his inconsistent conduct and his felony history when he won $125,000 plus punitives. So, objectively, even the trial court itself stated on the record in an earlier hearing before the damages trial that he could not understand why the plaintiffs fought to stay in the premises of an abusive landlord. That's in the transcript of the March 1, 2023 hearing in pages 7 and 12. His exact language was, he said he, quote, could not imagine the plaintiffs staying and not leaving the defendant's apartment. Also, objectively, the trial court abused his discretion when he ignored these facts about Plaintiff Murray. He had multiple felony convictions affecting his credibility. In fact, his first witness was to call his probation officer. Number two, he allowed, and this is unquestionably evidence, the defendant herself to visit him in the hospital while he recovered from a heart attack. In fact, he claimed a trial that was caused by her. There were no special or economic damages ever proven, not a penny's worth. There was no medical records admitted or medical bills admitted. And, of course, there was no expert medical testimony was ever proffered by the plaintiffs. I think that the court should have found that a reasonable plaintiff would have, of course, blocked this abusive landlord when they were sending texts that they found objectionable. And I believe they were reasonable in believing that the texts were objectionable. So I'm not saying, Your Honor, that this case did not involve outrageous conduct. That would be dishonest. I'm not going to take that position. Instead, Ms. Kios, his girlfriend, Mr. Murray's girlfriend, was asked at C-283 by her attorney, quote, Do you believe that if this lawsuit had not been filed that Ms. Abraham would have killed Joseph? The defendant, the only time in the record whose prose said, Sally Abraham objects, the court overrules the objection. But, in fact, the objection had to have been sustained, even at Ben's trial, because the evidence was unduly prejudicial, calls for speculation, and sought an expert opinion from the lay witness, one that she could not give. I want to go back about the testimony regarding Mr. Murray's felon status and why not she alluded to. I mean, this was all presented to the trial court. As a prior fact, the person who's supposed to look at the credibility of the witnesses, I'm assuming cross-examination was made. So all of this was flushed out for the trial court to consider in making its ultimate decision. Well, I can't say there was any effective cross-examination because my client was prose, but she had the opportunity. And I felt that, overall, she was treated well by Judge Coker as a prose litigant in a major case. Let me ask you this. In page 4 of your brief, under Statutes Involved, you cite 735 ILCS 5-2-1115.05a and d. And when I looked that statute up, at the end it says that was declared unconstitutional by Best v. Timber Machine. I reread Best from 1997 lately. And I reread that opinion in the Best case. It's a big case. I mean, Professor Lawrence Tribe represented the plaintiffs in that case to knock out the $500,000 compensatory damages, part of the new statute at that time. But I did not see that this section, 2-1115.05, was ever declared unconstitutional. The footnote at the end of it, when I looked it up in our statute book, the footnote at the end says Federal Act 89-7, which added this section, was held unconstitutional in its entirety by Illinois Supreme Court in the case of Best v. Timber Machine. 37. Thank you. Your Honor, when I read Best lately, I did not see that. And if I should have, I apologize for that. That was never argued in the court below, by the other side, by the way. And that would be my argument, Your Honor. Thank you. Well, thank you. Before we let you go, just in case you want to do things, do you have any questions? No, not right now. No questions. Thank you, Your Honor.  And I'm going to give them your time for rebuttal. Ms. Weigel, are you ready to proceed? I am, Your Honor. Thank you. And once again, Your Honor, I do want to thank you very much for the accommodation of allowing me to appear by Zoom. My name is Cheryl Weigel. I represent the plaintiffs at the lease. Your Honor, what we have today is a very typical Fair Housing Act case. And I think Your Honor's questions about Fair Housing Act being a federal statute are well taken. What made this case unusual for the trial court was that, and I was the attorney who represented the plaintiffs before the trial court, was that the defendant opted to represent herself. She represented herself the entire time. And that was a problem. And as the record shows, over and over again, the trial court recommended that Ms. Abraham retain counsel. And over and over again, Ms. Abraham refused. And over and over again, including right before trial, the court again recommended that Ms. Abraham retain counsel. At the pre-trial, the court recommended that Ms. Abraham retain counsel. And she said that she didn't need one because, in her belief, the case was easy. And she made multiple comments to the defendant on and off the record. And in fact, the record also reflects some of the emails that she would send to me about how, in her mind, there was nothing going on in this case that she believed that she was going to win. And so she did not make the record, quite frankly, that counsel would need for this court to reverse. We have had a full trial. And counsel concedes only one time the defendant objected, just once. And so there is nothing in the record that indicates that we did not prove economic damages. That is a factual statement that would need to be proven by something in the record. And that's simply not there. Excuse me. What actual damages did you prove? We believe that we proved that an actual damage, including emotional distress, including the fact that my client needed to move, including the loss of property, that all of that was established at trial. And Ms. Abraham also did not just cross-examine my client on those issues. And as Your Honors are aware, a prosigilient is held to the same standard as anyone else. And one of the things that we established in our pre-trial memo was that for purposes of the Fair Housing Act, emotional damages are economic damages. That for purposes of the Fair Housing Act, emotional distress is actual damages. And so here is the problem. And this is why we believe that each of the defendant's arguments fails. Number one, there is a huge legal problem that the defendant needed to interpose objections at the time, and they were not made. There was no objection made as to economic damages at trial. And what she is doing now is raising an avenue for that. Number two, that there was no objection raised to the procedure of the trial. What we were doing is proceeding under a federal substantive law in state court, which we are allowed to do because, as Your Honors are aware, Illinois courts are courts of general jurisdiction. And so what you are not allowed to do is pick and choose which substantive procedural rules you get to have. But number three, in applying the rules that counsel has stated, we none of those were violated. So, in a word, first of all, we believe that all of those were waived. But even if Your Honors find that they were not, the status is three times damages that are awarded, not three times damages that are approved. And counsel concedes that compensatory damages were awarded. So even by counsel's reading of the statute, that statute was not violated here. And so Your Honors don't even have to go into farming with that. On the basis of the statute, it's just three times the damages awarded. Number two, right after attempting to apply a state substantive law to a federal case, they attempt to apply federal procedural law to a state case and say, well, actually, you have to apply federal procedural law. No, again, that is something that should have been raised before trial, when the court held a pre-trial when we went over this. And that was not reasonable. And then finally, we get to the issue of credibility. And I think what Your Honors said was quite correct. The trial court is in a position to judge the credibility of witnesses. And what we are dealing with now is an attack on the credibility of the plaintiff. And that's a cross-examination. There is a reason that the court below warned Ms. Abraham on multiple occasions against proceeding per se. There is a reason that Ms. Abraham decided not to obtain an attorney, and this is the result. And so what the defendant is asking for is special treatment. She's asking for a dual burden, because the trial didn't go the way she expected. And we don't believe that the court should have done that request. Now, I do want to make one other point about this credibility issue. Counsel mentioned that my client's parole officer was one of our witnesses, and that's true. But it kind of undercuts his argument that he is not a credible witness, his own parole officer is coming to testify on his behalf. And it only goes to buttress how the court below made proper determinations of credibility, that this was not something that the court below pulled out of the hat. If Ms. Abraham had a problem with that testimony, she should have objected, raised that, or done proper cross-examination. She chose not to do that, just as she chose not to retain an attorney. And now she needs to be found by the results of the trial. That is our argument, and we're happy to take your other questions. Justice Case? I don't think I have any. Justice Long? No questions. I don't think we have any questions. Thank you very much. Thank you, counsel. Mr. Ryan, go right ahead with your rebuttal. Thank you. Briefly, on the waiver argument that Ms. Michael just brought up, and it's in her brief, too, I was, when she said that my client represented herself throughout the trial court, that is technically not true, because after the verdicts of August of 23 were entered, she hired me and I filed a timely post-trial motion. Two days later, I filed an amended post-trial motion that the court allowed me to file. And the first post-trial motion, page 1, at C-274, we claim the punitive award was excessive and bore no relationship to the compensatory damages award. In the amended post-trial motion on page 1 at C-288, we made the same argument in the amended post-trial motion. And on the 19th of October of last year, in our memorandum of law before the hearing, in support of our post-trial motions, we cited at C-326-735-ILCS-5-2-1115.05, and we cited the Sacramento case, too, at C-329-330. So when the circuit court denied the post-trial motions, it had before it defendants' arguments that the punitive awards were excessive. I don't know that the defendant was required before a judgment verdict was issued in writing. Was she required to raise punitive damages arguments at that time when there was no punitive award entered? In other words, she's not Preskin. She cannot read the court's mind. And the only time that any lawyer could have objected to the punitive awards would have been on a post-judgment motion. I think the reference might have been that you would have objected to some of these questions that were asked about emotional distress. Had you been the attorney and known as Mr. Ryan, I think you would have done things differently. But you would agree that under the Fair Housing Act, emotional distress is an actual damage. Yes. And there were multiple questions asked of these tenants about the distress that it had caused. No doubt. The record was complete with that. Okay. Thank you. Any other questions, Your Honors? Mr. Baum? No. Thank you very much. Thank you. Counsel Oxley, we will take this matter under advisement. We will issue and order a new course.